# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| TAMMY SAMBROOKS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:12-CV-102 |
| | ) |
| CLAUDE CHOISEME, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on the: (1) Defendants' Motion for Partial Summary Judgment, filed by Defendants, Claude Choiseme, Walgreen-Oshkosh Inc., d/b/a Walgreen Co., and Transervice Lease Corp., d/b/a Tranverse Lease Corp., on May 7, 2014 (DE #34); and (2) Motion to Strike Certain Exhibits Designated By Plaintiffs, filed by Defendants, Claude Choiseme, Walgreen-Oshkosh Inc., d/b/a Walgreen Co., and Transervice Lease Corp., d/b/a Tranverse Lease Corp., on June 6, 2014 (DE #42). For the reasons set forth below, the Motion to Strike (DE #42) is **DENIED** as **MOOT**. Defendants' Motion for Partial Summary Judgment (DE #34) is **GRANTED**. The Plaintiffs' claims against Defendant, Transervice Lease Corp. d/b/a Transverse Lease Corp., are hereby **DISMISSED WITH PREJUDICE**. Additionally, the claims for reckless and willful and wanton conduct (for punitive damages) are **DISMISSED WITH PREJUDICE**. The remaining claims in the complaint **REMAIN PENDING**. Finally,

Plaintiffs' request for additional discovery pursuant to Fed. R. Civ. P. 56(d) is **DENIED**.

BACKGROUND

This litigation arises from a motor vehicle accident which occurred on May 14, 2010, on southbound US 41 in St. John, Lake County, Indiana, between Defendant, Claude Choiseme (hereinafter "Choiseme" and Plaintiff, Tammy Sambrooks (hereinafter "Sambrooks"). Defendants moved for partial summary judgment, arguing they are entitled to judgment as a matter of law on the claims against Defendant, Transervice, and on all the claims for reckless, willful, and wanton conduct against all the Defendants. (DE #34). Plaintiffs filed a response memorandum on May 23, 2014 (DE #41), and Defendants filed a reply on June 6, 2014 (DE #44). Therefore, this motion is fully briefed and ripe for adjudication. Additionally, Defendants filed a motion to strike certain exhibits designated by Plaintiffs (DE #42). Plaintiffs failed to file a response to the motion to strike Plaintiffs' Exhibits A, E, and F, which Defendants argue are not admissible for the purpose of ruling on this motion because they are not authenticated.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes, "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue for trial. *Becker v. Tenenbaum-Hill Assocs.*, Inc., 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that might affect the outcome of the suit under

governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be, "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In a diversity case, like this action brought under 28 U.S.C. § 1332, this Court applies Indiana state substantive law and federal procedure. *See, e.g., Erie v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719-20 (7th Cir.1994)(citing *Kutsugeras v. AVCO Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992)).

<u>Motion to Strike</u>

The Defendants filed a Motion to Strike Plaintiffs' Exhibits A, E, and F, which are not authenticated. Plaintiffs' Exhibit A is the Indiana Standard Crash Report (DE #40-1); Plaintiffs' Exhibit E is the USDOT Safety Measurement System Carrier Overview (DE #40-5); and Plaintiffs' Exhibit F is the USDOT Safety Measurement System Inspection Report (DE #40-6). Plaintiffs did not respond to the motion to strike.

Motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). As discussed below, even considering the evidence set forth by Plaintiffs (including unauthenticated Exhibits A, E, and F), partial summary judgment is still appropriate, and this Court prefers to rule upon all the evidence before it. Therefore, the motion to strike (DE #42) is **DENIED AS MOOT**.

Motion For Partial Summary Judgment

Undisputed Facts

The two vehicles involved in the accident were Plaintiff's vehicle and a semi-tractor trailer operated by Choiseme, owned and maintained by Defendant, Transervice Lease Corporation (hereinafter "Transervice"), and leased to Defendant Walgreen-Oshkosh, Inc.

5

("Walgreen"). Plaintiff alleges she was stopped at a red traffic light and that Choiseme rear-ended her vehicle. (DE #1, ¶¶ 5,8.) Sambrooks testified she was on her way to K-Mart in St. John, Indiana, heading southbound on US 41. (Sambrooks Dep., p. 30.) She was stopped behind another semi tractor-trailer waiting for the light to turn green, when all of a sudden she heard glass breaking and the sounds of the collision. (*Id.*) She could not recall any conversations at the scene with the other driver or investigating police officer. (*Id.*, pp. 31-32.) She did not have personal knowledge regarding the speed at which Choiseme was traveling. (*Id.*, pp. 78-79.)

Choiseme admits that the accident occurred when he was driving southbound on US 41 and when the car in front of him stopped, and he "was unable to avoid striking the rear of her vehicle." (Defs.' Ex. A, No. 15.) However, Choiseme alleges the collision occurred because Sambrooks' vehicle in front of him stopped. (*Id.*) This is somewhat different than the narrative in the police report, which reads that Choiseme "thought the traffic was moving. He realized the vehicles were stopped and hit the brake but could not stop in time and hit vehicle #2. He thought the traffic light was green." (DE #40-1.) The listed speed limit was 45 miles per hour, and was approaching a lower speed zone of 35 mph. (Casassa Expert Report, DE #40-2, p. 2.) Although there is no direct evidence how fast Choiseme was traveling before the collision, Plaintiffs' expert has

opined that he was traveling at least 50 mph before he applied the brakes. (*Id.*, p. 4.)

At the time of the accident, Choiseme was operating a 1999 International semi-tractor/trailer combination leased by Walgreen from Transervice. (Defs.' Am. Answer, ¶ 6.) The arrangement between Defendants arose out of a Labor Services Agreement and an Equipment Leasing and Maintenance Agreement ("leasing agreement"). (Defs.' Exs. C, D.) Transervice was the owner and lessor of the equipment and Walgreen was the lessee of equipment. *Id.* Under the terms of the leasing agreement, Walgreen did not have exclusive possession and control of the equipment and, in addition to its maintenance obligations, Transervice supplied all of the fuel required to operate the equipment while Choiseme drove it. *Id.*

Defendants have admitted that Choiseme was negligent and was at fault for the collision with Sambrooks, but Defendants deny any more egregious conduct. (DE #28; DE #32.) The Indiana State Police Commercial Enforcement Division found no violations regarding the equipment's braking system. (Defs.' Ex. B.) Choiseme was cited for violating several trucking regulations - 49 C.F.R. § 392.2D (local law violation - speed too fast to avoid a collision), 49 C.F.R. § 395.8(k)(2) (failure to retain a copy of his driver logs for the previous seven days), and 49 C.F.R. § 395.8(f)(1) (failure to keep his driver log current on the day of the collision). (Indiana State Police Commercial Vehicle

Enforcement Report, Defs.' Ex. B.)

Whether Transervice Is Entitled To Judgment As A Matter Of Law On All Of Plaintiffs' Claims

Defendants argue Transervice is entitled to summary judgment because it merely owned the equipment being operated by Choiseme at the time of the accident, maintained the equipment, and leased the equipment to Walgreen. (DE #35, p. 4.) Defendants cite to *Johnson v. Motors Dispatch, Inc.*, 360 N.E.2d 224 (Ind. Ct. App. 1977), in support of the proposition that summary judgment is warranted because Transervice had no control or right to control the driver's operation of the equipment. That case provided for the possibility of multiple employers to be liable for the negligence of borrowed servants when there is "mixed control" over the driver by both the lessor and lessee. *Id.* at 229. In *Johnson*, an equipment lessor, EEZ, leased its equipment to a lessee, Jones, who employed a driver, Moore, and then subsequently leased the equipment to another lessee, Motor Dispatch, pursuant to a trip lease, after which the driver Moore was then involved in a collision with another motorist while hauling cargo for Motor Dispatch. Plaintiffs sued several parties, including the lessor of the equipment, EEZ. *Id.* at 225. The Court affirmed the grant of summary judgment to the lessor, EEZ, because there was no genuine issue of fact as to whether EEZ had a right to control the driver. *Id.* at 229-30.

This case differs from *Johnson* because there are no dual lessees. Yet, it does involve the similar issue of potential dual possession, control, and operation under the Federal Motor Carrier Safety Regulations. Moreover, like in *Johnson*, Transservice had no control over the driver, Choiseme, or right to control Choiseme's driving activities.

Plaintiffs argue Transservice had some level of possession and control of the equipment, and was therefore responsible for the operation of the equipment. Additionally, they contend the leasing agreement between Transservice and Walgreen does not comply with the Federal Motor Carrier Safety Regulations because it does not state that Walgreen had exclusive possession, control and use of the equipment for the duration of the lease. (DE #41, p. 5-8.) To the contrary, the lease does state:

> The Sublessee [Walgreen], during the term of the lease, shall have exclusive possession and control of said equipment to the exclusion of the Lessee [Berkeley Leasing corp. n/k/a/ Transservice], except, however, that the Lessee shall have the right to custody or possession of such equipment for any time reasonably necessary to effect repairs or to perform his obligation in relation to maintenance; Sublessee shall make such equipment available at reasonable intervals for inspection by Lessee.

(DE #36-4, ¶ 4, p. 16.) The Federal Motor Carrier Safety Regulations cited by Plaintiffs, 49 C.F.R. § 376.12(c)(1), is silent as to whether the lessor or lessee of equipment is required to maintain the leased equipment; therefore, there does not seem to

9

be anything improper about Transervice retaining the right to temporarily possess the equipment to do maintenance or repairs. Defendants are correct in their analysis that if the Court were to adopt Plaintiffs' position that Transervice's limited possession of the equipment for maintenance purposes would subject Transervice to liability resulting from the negligent operation of the equipment, then the language of 49 CFR 376.12, which requires that the lessee have exclusive possession, control, and use of the equipment for the duration of the lease, would have no effect on the imposition of liability in the event of an accident. Section 376.12 clearly states the motor carrier with whom exclusive possession rests has the responsibility for the operation of the equipment under the federal regulations. *Illinois Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 256-57 (Ind. Ct. App. 2009). In this case, it is undisputed that Transervice did not have possession or custody of the equipment at the time of the accident, that Choiseme was operating the equipment under Walgreen's operation authority, that Walgreen had exclusive possession of the equipment, and that Walgreen had the ultimate responsibility for the operation of the equipment.

Because the undisputed evidence is that the cause of the accident was due to the negligent operation of the equipment by Choiseme, and not as a result of any failure or breach of duty on Transervice's part to maintain the vehicle in proper working order,

there is no genuine issue of material fact on the issue of Transervice's negligence or breach of duty. Therefore, Transervice, as the owner and lessor of the equipment, is entitled to judgment as a matter of law.

> Whether Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiffs' Allegations Of Reckless, Willful and Wanton <u>Conduct</u>

Defendants contend that although Choiseme's conduct may be negligent, there is no evidence to create a question of fact regarding whether he was reckless, willful, or wanton. (DE #35, p. 6.) Thus, they request dismissal of the punitive damages claims against all defendants.

A principal goal of punitive damages is to serve the public interest by deterring wrongful conduct in the future by the wrongdoer and others similarly situated. *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 520 (7th Cir. 2012). There is no right to punitive damages. *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 362 (Ind. 1982). "Whether a party may recover punitive damages is usually a question of fact for the fact finder to decide; but it may be decided as a matter of law." *Williams v. Younginer*, 851 N.E.2d 351, 358 (Ind. Ct. App. 2006) (quotation omitted). A court may grant summary judgment to resolve punitive damages claims. *Breeck v. City of Madison*, 592 N.E.2d 700, 703 (Ind. Ct. App. 1992).

Under Indiana law:

> [P]unitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

*Hi-Tec Props., LLC v. Murphy*, 14 N.E.3d 767, 778 (Ind. Ct. App. 2014) (quotation omitted). To award punitive damages:

> [The court] would have to conclude that under the known circumstances, the defendant, 'subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences,' that is a serious wrong, 'tortious in nature,' has been committed, and that the public interest would be served by the deterrent effect of punitive damages.

*Tacket v. General Motors Corp. Delco Remy Div.*, 818 F.Supp. 1243, 1246 (S.D. Ind. 1993)(quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 136-37 (Ind. 1988)).

Indiana case law does not support the issuance of punitive damages on defendants involved in vehicle collisions that were merely negligent, without evidence of the additional mental state of malice or wantonness. *See, e.g., Karpov v. Net Trucking,* Inc., No. 1:06-cv-195-TLS, 2011 WL 6056618, at *5 (N.D. Ind. Dec. 5, 2011) (punitive damages appropriate where driver of fully loaded tractor trailer went above the speed limit in a construction zone, with alcohol in his system at the time of the accident); *but see State v. Boadi,* 905 N.E.2d 1069, 1075 (Ind. Ct. App. 2009) (holding "the failure to stop at a red light due to inadvertence or an error of judgment, without more, does not constitute recklessness as a

matter of law"); *Westray v. Wright*, 834 N.E.2d 173, 180-81 (Ind. Ct. App. 2005) (holding defendant not grossly negligent because, *inter alia*, there was no evidence he was "drowsy, intoxicated, or otherwise affected by any foreign substance"); *Purnick v. C.R. England, Inc.*, 269 F.3d 851, 852-53 (7th Cir. 2001)(affirming summary judgment, finding evidence that driver falsified his logs to hide amount he had driven the week before the accident, was "mesmerized" by the road, and failed to brake his tractor-trailer, was insufficient to prove a mental state necessary to sustain punitive damages because there was no proof he knew his actions would probably cause harm); *Austin v. Disney Tire Co., Inc.*, 815 F.Supp. 285, 288-90 (S.D. Ind. 1993)(granting summary judgment on punitive damages issue where defendant glanced down while approaching an intersection, finding evidence of driver's "lack of skill" does not lead to an inference that the driver acted with conscious disregard for danger); *Samuel v. Home Run, Inc.*, 784 F. Supp. 548 (S.D. Ind. 1992)(granting partial summary judgment on punitive damages issue where plaintiff failed to show clear and convincing evidence that the conduct was wanton).

In *Miller*, the Court of Appeals of Indiana held that the defendant, operating a company-owned vehicle, after stopping at a stop sign, proceeding into the intersection, and then colliding with a passing vehicle, was not grossly negligent. *Miller v. Indiana Dept. of Workforce Dev.*, 878 N.E.2d 346, 357 (Ind. Ct. App.

13

2007). Specifically, the court found that the defendant was negligent, but there was no evidence he "engaged in any sort of conduct with reckless disregard." *Id.* "Plainly stated, courts applying Indiana law have routinely held that lousy driving, without more, does not warrant punitive damages." *Powell v. United Parcel Service, Inc.*, No. 1:08-cv-1621-TWP-TAB, 2011 WL 836949, at *3 (S.D. Ind. Mar. 4, 2011).

Even construing the facts in a light most favorable to Defendants and drawing all legitimate inferences in their favor, as this Court must at this summary judgment stage, as a matter of law, punitive damages are not warranted. Even considering Plaintiffs' expert's opinion that Choiseme was traveling 50 mph when the posted speed limit was 45 miles per hour, the Court does not believe this slight increment of speeding is indicative of engaging in reckless disregard. Similarly, whether Choiseme believed the light was green and thought the traffic was moving, or he just couldn't stop before colliding with Sambrooks' vehicle, they are both merely examples of inadvertence, or error in judgment, and do not show recklessness or willful and wanton behavior.

In *Purnick*, the Court found punitive damages could not be awarded in somewhat similar circumstances, but even more egregious than this case. *Purnick*, 269 F.3d 851. In that case, the plaintiff presented evidence that the truck driver had falsified his logs and driven beyond the ten-hour limit several times in the

14

week before the accident, arguing this led him to be fatigued. *Id.* at 852. The Court found this did not justify punitive damages because Plaintiff could not present any evidence the truck driver "actually knew that he was so tired that continuing to drive would likely cause injury," *Id.* at 853. Here, Plaintiffs contend that because Choiseme was cited for not retaining a copy of his logs for the previous seven days and not keeping his log current on the day of the collision, that would imply that Choiseme was not credible and that he was fatigued at the time of the accident. (DE #41, p. 13-14.) Whether Choiseme was fatigued at the time of the collision is unsupported speculation, and, like in *Purnick*, there is no actual evidence in the record that Choiseme was indeed fatigued at the time of the accident, and that he knew he was so tired that driving would likely cause injury. *Purnick*, 269 F.3d at 853. The one-day's driver's log attached as an exhibit to Plaintiffs' memorandum (DE #40-3) shows Choiseme was off duty the night before the accident, and that he had only been driving for one and a half hours total the day prior to the accident.

Additionally, the other driver logs for the 7 days before the incident were not requested by Plaintiffs until almost 2 years after the logs were destroyed by Walgreen, thus the other daily driver logs do not raise a question of fact as to whether Choiseme was so fatigued at the time of the accident he knew he would cause

15

harm.[1]  Plaintiffs' reliance upon *Dylak v. State* is misplaced, as that case involved the criminal prosecution of a truck driver for reckless homicide, where there was substantive evidence the driver was fatigued at the time of the collision.  *Dylak*, 850 N.E.2d 401, 405 (Ind. Ct. App. 2006).  In *Dylak*, the evidence showed the driver exceeded the 70 hour rule (a semi truck driver cannot exceed 70 hours of on duty time in a period of 8 days), that in the week prior to the accident, on three separate days, the driver violated the 10 hour rule (a driver may only drive 10 hours, then must not work for 8 hours), and the truck driver told the investigating police officers at the scene he was "tired and that he was going to rest."  *Id.* at 405.  In this case, Plaintiffs have failed to designate any such facts to support any such inference that Choiseme was fatigued.

In this case, the Court finds that, as a matter of law, Plaintiffs have failed to put forth "sufficient direct or circumstantial evidence of [Choiseme's] state of mind to conclude that [he] recognized the danger and consciously disregarded it." *Samuel*, 784 F. Supp. at 550.  Nothing in the record indicates that Choiseme acted purposefully, with malice or wantonness, or that he was driving while impaired.  There is no evidence which supports that Choiseme knew of, but consciously disregarded, the possibility

---

[1] The FMCSR require that a motor carrier maintain records of duty status and supporting documentation for each driver for a period of six months.  49 C.F.R. 395-8(k).

that his actions would result in a collision with Sambrooks' vehicle. Plaintiffs have not carried their burden of showing, by clear and convincing evidence, that Choiseme acted with malice, fraud, gross negligence, or oppressiveness. *Hi-Tec Props.*, 14 N.E.3d at 778; *see also Samuel*, 784 F.Supp. at 550 ("Indiana requires that punitive damages be supported by 'clear and convincing evidence' of the malfeasor's state of mind."). Because Plaintiffs have failed to produce sufficient evidence from which a rational trier of fact could impose punitive damages, summary judgment is warranted on those claims.

Finally, Plaintiffs state that to the extent disputed factual issues are not evident based on the present record, they request leave to engage in additional discovery about the driver's logs to respond to the Defendants' motion for partial summary judgment. (DE #41, pp. 15-21.) Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). If Plaintiffs needed additional discovery to oppose summary judgment, they should have filed a motion under Federal Rule of Civil Procedure 56(d), supported by an affidavit or declaration, explaining why they could not present evidence

17

essential to their opposition. *Simmons v. McCulloch*, 546 Fed. Appx. 579, 583 (7th Cir. 2013) (citing *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011); *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 56(d). Defendants should have filed a separate Rule 56(d) motion if they believed a continuance was necessary, and submitted an affidavit explaining why the additional discovery was needed. Defendants failed to file a separate motion seeking such relief, supported by affidavit or declaration, and their request for additional discovery in their response memorandum is procedurally inappropriate, and **DENIED**.

CONCLUSION

For the reasons set forth above, the Motion to Strike (DE #42) is **DENIED** as **MOOT**. Defendants' Motion for Partial Summary Judgment (DE #34) is **GRANTED**. The Plaintiffs' claims against Defendant, Transervice Lease Corp. d/b/a Transverse Lease Corp., are hereby **DISMISSED WITH PREJUDICE**. Additionally, the claims for reckless and willful and wanton conduct (for punitive damages) are **DISMISSED WITH PREJUDICE**. The remaining claims in the complaint **REMAIN PENDING**. Finally, Plaintiffs' request for additional discovery pursuant to Fed. R. Civ. P. 56(d) is **DENIED**.

**DATED: February 25, 2015**　　　　　　　　**/s/ RUDY LOZANO, Judge**
　　　　　　　　　　　　　　　　　　　　　　**United States District Court**